UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL MUSIC MUSEUM: AMERICA'S SHRINE TO MUSIC,<br><br>           Plaintiff,<br><br>  vs.<br><br>ROBERT JOHNSON and LARRY MOSS,<br><br>           Defendants. | CIV. 14-4113<br><br>ORDER DENYING MOTION TO STAY |

Defendant, Larry Moss, moves the court to stay this action pursuant to the *Colorado River* abstention doctrine. Plaintiff, National Music Museum: America's Shrine to Music (NMM), opposes the motion. For the following reasons, the motion to stay is denied.

**FACTUAL BACKGROUND**

NMM is a South Dakota nonprofit corporation located in Vermillion, South Dakota. Defendant Robert Johnson is a Tennessee resident who collects rock music instruments and other collectibles. Moss, also a Tennessee resident, is also engaged in the business of rock collectibles.

On February 12, 2008, Moss and Johnson executed an agreement whereby Johnson would convey four guitars to Moss in exchange for $120,000. Docket 13-1 at 13-14. Moss tendered a $70,000 down payment upon delivery of two guitars, with the balance of $50,000 payable on receipt of the remaining two guitars. *Id.* One of the guitars not initially delivered was a Martin D-35

guitar formerly owned by Elvis Presley (the Elvis guitar). On February 6, 2013, Johnson donated the Elvis guitar to NMM pursuant to a sales-donation agreement. Docket 5-1.

Moss sent an email to NMM on December 10, 2013, in which he claimed that he had purchased the Elvis guitar from Johnson and that Johnson had no right to transfer the Elvis guitar to NMM. Docket 13-1 at 18-19. Moss sent another email, dated January 16, 2014, requesting that NMM retain the Elvis guitar until its ownership could be resolved. *Id.* at 18.

Johnson filed suit against Moss in Tennessee state court on January 27, 2014, claiming damages for libel and defamation. Docket 13-1 at 1-3. Moss filed a counterclaim seeking specific performance, damages for breach of warranty relating to the National Steel guitar,[1] breach of contract for nondelivery of the two undelivered guitars including the Elvis guitar, and fraud based on Johnson's representations about both his ability to convey all four guitars and the provenance of the National Steel guitar. *Id.* at 4-12.

On July 7, 2014, NMM filed suit in circuit court in Clay County, South Dakota, requesting a declaratory judgment with respect to the ownership of the Elvis guitar, alternatively seeking damages against Johnson, and asserting that the doctrines of estoppel, waiver, and assumption of the risk bar Moss's claim to ownership of the Elvis guitar. Docket 1-1. Moss subsequently removed NMM's action to this court based on this court's diversity jurisdiction. Docket 1. Following removal, Moss answered the complaint and moved the court to

---

[1] The National Steel guitar was one of the two guitars initially conveyed in exchange for $70,000. Docket 13-1 at 13.

stay this proceeding pending a determination in Tennessee state court of the respective rights of Moss and Johnson to the Elvis guitar. Docket 13. Johnson has yet to appear before this court in this matter.

## DISCUSSION

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court addressed "principles . . . which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Id.* at 817. "These principles rest on consideration of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," exceptional circumstances permit a federal court to abstain from exercising jurisdiction when a concurrent state-court action is also pending. *Id.* at 817-18.

To determine whether exceptional circumstances exist, a court should evaluate the following factors:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority— not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006) (quotation marks omitted). "These factors are not intended to be exhaustive, nor are they mechanically applied." *Id.* When applying the *Colorado River* factors, " 'the balance [is] heavily weighted in favor of the exercise of jurisdiction.' " *Id.* (alteration in original) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 16 (1983)). Ultimately, a court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction . . . rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26 (italics in original).

A state action must be parallel to the federal case before a federal court may decline to exercise its jurisdiction under *Colorado River* based on the pendency of the state-court action. *See Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) ("The threshold question is whether the state and federal proceedings are parallel."). "Jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings." *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009).

The Declaratory Judgment Act gives courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Therefore, federal courts have broader discretion in deciding whether to abstain in actions seeking declaratory relief. *Id.* ("Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment

actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*.").

When a declaratory judgment action in federal court is parallel to a state-court action, the Eighth Circuit has stated:

> [F]or a district court to have discretion to abstain . . . the state court proceeding must present "the same issues, not governed by federal law, between the same parties," and the federal court must evaluate "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether the necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc."

*Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 796 (8th Cir. 2008) (quoting *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942)). When a parallel state-court proceeding is not pending, a federal court has limited discretion to abstain from exercising jurisdiction over a declaratory judgment action, but still has more discretion than it would under the rigorous *Colorado River* test. *See Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998-99 (8th Cir. 2005) (adopting a six-part test falling between *Wilton* and *Colorado River*).

In this case, Moss takes the position that because this is a declaratory judgment action and the Tennessee proceeding is parallel, this court should exercise its broad discretion under *Wilton* and decline to exercise its jurisdiction thereby allowing Johnson and Moss to resolve their contract issues in Tennessee state court. Alternatively, Moss contends that judicial efficiency and avoidance of piecemeal litigation would support abstention under the *Scottsdale* or *Colorado River* standards. NMM argues that because it seeks relief in addition to declarative relief, the action is not declarative. NMM further

- 5 -

asserts that this action is not parallel to the Tennessee state-court proceeding. As a result, NMM urges the court that it must apply *Colorado River* and because the actions are not parallel this court may not abstain. To determine which test to apply—*Wilton*, *Scottsdale*, or *Colorado River*—the court must answer the threshold questions of (1) whether this action is parallel with the Tennessee state-court proceeding, and (2) whether this action is declaratory in nature.

I.  **Parallel Proceedings**

"In the Eighth Circuit, to be parallel, 'a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court.' " *Cottrell*, 737 F.3d at 1245 (quoting *Fru-Con Constr. Corp.*, 574 F.3d at 535). Courts look to " 'sources of law, required evidentiary showings, measures of damages, and treatment upon appeal' for each claim." *Id.* (quoting *Fru-Con Constr. Corp.*, 574 F.3d at 536).

In the Tennessee action, Johnson has asserted Tennessee state-law tort claims for libel and defamation against Moss. Docket 13-1 at 1-3. In a counterclaim, Moss requests (1) specific performance of the sales agreement by Johnson; (2) damages for breach of warranty relating to the National Steel guitar; and (3) damages for breach of contract based on nondelivery of two guitars, including the Elvis guitar. Additionally, Moss alleges that Johnson's representations were fraudulent regarding his ability to convey the four guitars and the provenance of the National Steel guitar. Docket 13-1 at 4-12. The

counterclaim is also based on state-law claims under Tennessee law. NMM is not a party to the state-court action.

In this action, NMM asserts that it acquired valid, legal title to the Elvis guitar under South Dakota's adoption of the Uniform Commercial Code (UCC), and requests a declaration of its ownership. Alternatively, NMM requests damages from Johnson for breach of the sales-donation agreement (Docket 5-1) based on alleged deceit. NMM also argues that Moss is barred by the doctrines of estoppel, waiver, and assumption of the risk from claiming an ownership interest in the Elvis guitar.

The Tennessee action involves Tennessee law as applied to the sales agreement between Johnson and Moss. This case involves South Dakota law applied to the sales-donation agreement between Johnson and NMM. NMM is not a party to the state-court action, and the state-court action does not address NMM's interest in the Elvis guitar. The state-court action also encompasses significant conduct that has no relevance to the issue presented in this action. The parties are not substantially similar between the two actions and the claims and sources of law are different.

To establish his tort claims in the state-court action, Johnson must introduce evidence sufficient to show libel or defamation under Tennessee law. *See, e.g., Sullivan v. Baptist Mem. Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (discussing the requirements for a defamation claim, including a published statement, knowledge that the statement is false, and reckless disregard for the truth or negligence in failing to ascertain the truth). To prevail on his counterclaims in the state-court action alleging breach of the sales agreement,

Moss must introduce evidence relating to the sales agreement between himself and Johnson. Moss must also introduce evidence that the National Steel guitar—a guitar not involved in this federal action—is not the guitar Johnson claimed when he sold it to Moss.

In this case, NMM must introduce evidence relating to the sales-donation agreement, which agreement is not involved in the state-court litigation. NMM must also introduce evidence to establish its position that it was a purchaser in good faith or buyer in the ordinary course. *See Continental Grain Co. v. Heritage Bank*, 548 N.W.2d 507, 512-13 (S.D. 1996) (Konenkamp, J., specially concurring) (discussing the requirements of proving the "purchaser for value" and "good faith" elements under SDCL 57A-2-403). NMM need not introduce any evidence that Moss engaged in libelous or defamatory conduct, nor must NMM concern itself with the National Steel guitar. Ultimately, the evidentiary showings required in the state-court action bear little resemblance to the evidentiary showings required in this action.

The measures of damages are also dissimilar. In this case, NMM seeks declaratory relief. In the event NMM does not obtain the declaratory relief it requests, it seeks damages from Johnson based on Johnson's alleged misrepresentation in inducing NMM to enter the sales-donation agreement. Those damages will be measured under South Dakota law. Damages in the state-court action, however, will be determined in part based on Tennessee tort law, which has no application in this case, and in part on the sales agreement between Johnson and Moss. Both the state-court action and this action seek to resolve the question of who has title to the Elvis guitar, and both Moss and

NMM argue that they rightfully own the Elvis guitar. But in light of the dissimilarities in the remainder of the actions, the fact that both suits involve competing claims of title to the Elvis guitar is not enough to establish that the two proceedings are parallel.[2] Although the relief requested here by NMM may affect the availability of the specific performance remedy requested in Moss's state-court counterclaim, the remaining aspects of the proceedings are not similar. Furthermore, although resolution of the state court proceeding may change the posture of this action, or vice-versa, there is not a substantial likelihood that resolution of the state court proceeding will "fully dispose of" the issues before this court. *Cottrell*, 737 F.3d at 1245. Therefore, this proceeding is not parallel to the Tennessee proceeding.

---

[2] The reality that these proceedings are not parallel is underscored by Moss's reply brief, in which he states that he is only requesting a temporary stay of this proceeding, and once the Tennessee proceeding is complete, this court can take up the issues presented by NMM. *See* Docket 16 at 2. A stay based on *Colorado River* abstention necessarily contemplates that a federal court will play no further role in the action and it would be an abuse of discretion for this court to grant a stay under *Colorado River* if the court anticipates taking further substantive action in this case. *Moses H. Cone*, 460 U.S. at 28 ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." (internal citations omitted)). Moss's argument that the court should grant a stay before reopening the case and resolving the merits of NMM's complaint demonstrates that there is not a substantial likelihood that the state-court proceeding will completely resolve the issues presented in this action.

## II. Declaratory Action

The Declaratory Judgment Act allows federal courts to grant any "further necessary or proper relief based on" the court's declaratory judgment decree. 28 U.S.C. § 2202. Applying that language, the Eighth Circuit has held that "a court may still abstain in a case in which a party seeks damages as well as a declaratory judgment so long as the further necessary or proper relief would be based on the court's decree so that the essence of the suit remains a declaratory judgment action." *Royal Indem. Co.*, 511 F.3d at 793-94. Thus, the fact that NMM seeks damages from Johnson in the event NMM does not have title to the Elvis guitar does not compel the conclusion that this is not a declaratory judgment action.

In *Horne v. Firemen's Retirement System of St. Louis*, 69 F.3d 233 (8th Cir. 1995), the Eighth Circuit found that the plaintiff's suit seeking a declaration that a mandatory retirement age constituted unlawful discrimination was "most aptly characterized as one for declaratory judgment" because although the plaintiff suffered a threatened harm, he had not suffered any actual harm. *See Horne*, 69 F.3d at 236. In *Royal Indemnity Co.*, the Eighth Circuit held that declaratory relief ordering contribution from other parties "ar[o]se out of the district court's determination of the rights and responsibilities of the various insurers and, therefore, would clearly constitute 'further necessary or proper relief[.]' " *Royal Indem. Co.*, 511 F.3d at 794. Thus, "[t]he damages Royal Indemnity Company [sought were] not independent of the requested declaratory judgment, but [were] closely linked with it." *Id.*

In this matter, NMM requests that the court declare it to be the owner of the Elvis guitar. In the alternative, NMM requests damages against Johnson. NMM has not suffered harm yet because it still has the Elvis guitar, although the state-court action threatens NMM's interest in the Elvis guitar. Furthermore, any damages awarded to NMM would be closely linked with this court's resolution of NMM's request for declarative relief. Based on those facts, the court concludes that NMM's action is best characterized as an action for declaratory and other necessary and proper relief.[3]

## III. Application

Because this is a declaratory judgment action but the state and federal proceedings are not parallel, the court applies the following six-factor test:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

---

[3] If the court were to characterize this action as one for damages rather than essentially a declaratory judgment action, it would be bound to apply the *Colorado River* standard. Because there is no parallel proceeding, the court would not be permitted to abstain from exercising its jurisdiction over this case. Because the court is not abstaining under the more relaxed *Scottsdale* standard, the threshold question of whether this is a declaratory judgment action does not alter the outcome in this instance.

*Scottsdale*, 426 F.3d at 998 (internal quotation marks omitted). "This test allows the district court greater discretion than the exceptional circumstances test, but less discretion than it would have under the *Wilton* standard." *Id.*

Applying those factors, the first two factors weigh in favor of exercising jurisdiction. A declaratory judgment from this court would clarify NMM's rights in the Elvis guitar, which would completely resolve NMM's legal issue. Additionally, clarification of whether NMM is entitled to the Elvis guitar would alleviate any uncertainty over whether Moss can obtain specific performance in the Tennessee proceeding.

Moss contends that exercise of jurisdiction by this court would create greater uncertainty due to the risk of inconsistent judgments. The determination of NMM's ownership rights has little impact on litigation or judgment in the Tennessee tort and contract actions. One of Moss's claims in the Tennessee proceeding alleges Moss is entitled to damages because Johnson failed to convey the Elvis guitar as promised in the sales agreement. Even if Moss could no longer obtain specific performance and obtain title to the Elvis guitar as a result of a judgment in favor of NMM in this court, Moss has a damages remedy available to him in the Tennessee court.

The third factor also weighs in favor of an exercise of jurisdiction. This declaratory action involves the application of South Dakota law to the question of whether NMM can assert title to the Elvis guitar under the UCC and potentially a damages claim against Johnson.[4] Although Tennessee does have

---

[4] Even if Tennessee law applies to that agreement, the validity of such an agreement is unlikely to present an unsettled issue of Tennessee law. Federal

an interest in resolving claims applying Tennessee law to the contract between Johnson and Moss, that contract is not at the center of this dispute.

The fourth and fifth factors also weigh in favor of exercising jurisdiction. It is unlikely that a Tennessee court could grant any relief to NMM. Therefore, it is possible that a Tennessee court could not resolve the issue before this court. Because these actions are not parallel, there is not a significant risk of inefficiency or entanglement based on overlapping issues of law or fact. Moss's only argument with respect to these factors relates to the risk of inconsistent judgments. But the only potential inconsistency between what this court might do and what the Tennessee court might do would occur if the Tennessee court granted Moss's request for specific performance. In that event, Moss would then have to litigate the issue before this court, namely, whether his title to the Elvis guitar under the sales agreement could defeat NMM's title to the Elvis guitar under the sales-donation agreement. Therefore, staying this action would not resolve that issue more efficiently.

With respect to the sixth factor, Moss does not suggest, and the court sees no evidence, that this action was filed as a device for procedural fencing. Accordingly, the sixth factor does not weigh in favor of abstention.

Even if the court found that the factors weighed in favor of abstention based on the *Scottsdale* test, the court would not be *required* to abstain. *See Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 972 (8th Cir. 2013) ("Our review of cases addressing abstention in the context of the Declaratory Judgment Act reveals that it is relatively uncommon for reviewing courts to

---

courts regularly apply the laws of other states in diversity actions.

find discretion abused when a district court elects to exercise jurisdiction."). In cases where the Eighth Circuit has found it inappropriate for a district court to entertain a declaratory judgment action, important distinguishing considerations such as an unsettled question of state law or inappropriate forum shopping were present. *See id.* at 972-74 (discussing cases). No such considerations are present here. As a result, even if the *Scottsdale* factors weighed in favor of abstention, the court would exercise its discretion and not abstain.

## CONCLUSION

The Tennessee proceeding is not parallel to this proceeding. Even though the court has limited discretion to abstain in these circumstances, after weighing the factors in *Scottsdale*, the court concludes that abstention is inappropriate. Accordingly, it is

ORDERED that defendant Larry Moss's motion to stay proceedings (Docket 13) is denied.

Dated December 9, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE