UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL MUSIC MUSEUM: AMERICA'S SHRINE TO MUSIC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ROBERT JOHNSON and LARRY MOSS,<br><br>　　　　　Defendants. | 4:14-CV-04113-KES<br><br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

　　　Plaintiff, National Music Museum (NMM): America's Shrine to Music, brings a declaratory judgment action against defendants, Robert Johnson and Larry Moss. NMM seeks a declaration that it is the valid, legal owner of a Martin D-35 guitar that was once owned by Elvis Presley. Both NMM and Moss move for summary judgment. The court denies both motions.

## BACKGROUND

　　　The undisputed facts are as follows:

　　　This litigation revolves around a Martin D-35 guitar that was formerly owned by Elvis Presley. In February 1977, Presley dropped and broke the guitar during a concert in St. Petersburg, Florida. Presley gave the guitar to a female fan at the show. The guitar eventually made its way into the hands of Johnson, a collector of musical instruments and memorabilia. Both NMM and

1

Moss claim ownership of the guitar based on their respective agreements with Johnson.

In 2007, Moss and Johnson started negotiating about the purchase of the Elvis guitar. In February 2008, the parties reached an agreement. Moss would pay Johnson $120,000 for four guitars, one being the Elvis guitar. The parties agreed to two separate exchanges. Moss would take immediate possession of two guitars and pay Johnson $70,000. And by April 12, 2009, Johnson would later deliver to Moss the Elvis guitar and the remaining guitar. Upon delivery Moss would pay Johnson the remaining $50,000.

At the time of contracting, the Elvis guitar was on display at the Rock 'n' Soul Museum in Memphis. During discovery, Moss testified that he agreed to the continued display through January 2009 of the Elvis Guitar at the Rock 'n' Soul Museum. On November 21, 2008, however, Johnson removed the guitar from the Rock 'n' Soul Museum. Johnson listed the guitar on Alexander's, an auction website, in the summer of 2009. Moss testified in his deposition that he saw the guitar on Alexander's, but Moss did not take any legal action against Johnson at that time. Docket 41 at 5.

In 2012, Johnson contacted NMM about the sale and donation of a number of musical instruments, including the Elvis guitar. NMM and Johnson came to an agreement. NMM would pay Johnson $250,000 for a John Entwistle Gibson Korina Explorer, and Johnson would donate to NMM various instruments, including the Elvis guitar. The deal was conditioned on NMM's authentication of all of the instruments. During discovery NMM employees

testified that they confirmed the authenticity of the instruments by contacting various professionals in the field and comparing the instruments to photographs of the original. After NMM authenticated the instruments, NMM entered into a one page written agreement with Johnson. Johnson delivered the Elvis guitar to NMM on February 4, 2013. Later, on December 10, 2013, Moss contacted NMM regarding his claim over the Elvis guitar.

On July 7, 2014, NMM filed its complaint in state court seeking a declaratory judgment that NMM is the legal owner of the Elvis guitar. On July 22, 2014, Moss removed the action to this court on diversity grounds. Both parties now move for summary judgment.

## DISCUSSION

I. **Full Faith and Credit, Res Judicata, and Collateral Estoppel**

Before discussing the parties' motions for summary judgment, the court must address a threshold issue. Moss argues this court is bound by a judgment of the Chancery Court of Tennessee for the Thirtieth Judicial District of Memphis, which found that "Moss holds legal and equitable title to the [Elvis] guitar . . . [on] the date of contracting, February 12, 2008." Docket 29-5. Moss bases his argument on the doctrines of full faith and credit, claim preclusion, and issue preclusion. Docket 41 at 12-14. For the following reasons, the court disagrees.

The Full Faith and Credit Clause of the United States Constitution compels federal courts to recognize valid state court judgments. *See Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 (1998). The text of the

clause reads, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. CONST. art. IV, § 1. This means that a valid state court judgment receives the same recognition in federal court as the judgment would receive in the issuing state. 28 U.S.C. § 1738. Thus, the court must determine what effect the Tennessee judgment would have in Tennessee, and the court must consider Tennessee's law on res judicata and collateral estoppel.

### A. Res judicata

Tennessee's law on res judicata bars parties and their privies from litigating "the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Hooker v. Haslam*, 393 S.W.3d 156, 165 n.6 (Tenn. 2012) (emphasis removed from original). To determine whether a suit stems from the "same cause of action," Tennessee applies the "transactional test" from the Restatement (Second) of Judgments. *Id.* at 166 n.6. Although the transactional test "is not capable of a mathematically precise definition," "the expression connotes a natural grouping or common nucleus of operative facts." Restatement (Second) of Judgments § 24 cmt. b. (1982). The transactional test balances "the interests of the defendant and of the courts in bringing litigation to a close" against "the interest of the plaintiff in the vindication of a just claim." *Id.*

Under the transactional test, NMM's suit would not be barred by the doctrine of res judicata. NMM and Moss claim title to the Elvis guitar based on two different factual circumstances. NMM derives its claim to the Elvis guitar

from the February 6, 2013 Sales-Donation Agreement it signed with Johnson. The prior Tennessee litigation concerned the February 12, 2008 sales agreement between Johnson and Moss. There is no common nucleus of operative fact. Thus, NMM's claim is not barred by Tennessee's law on res judicata.

### B.     Collateral estoppel

Tennessee recognizes the doctrine of collateral estoppel. *Mullins v. State*, 294 S.W.3d 529, 534-35 (Tenn. 2009). The Tennessee Supreme Court has explained, "Collateral estoppel is a judicially created issue preclusion doctrine." *Id.* at 534 (citations omitted). The doctrine "bars the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding." *Id.* (citations omitted). For collateral estoppel to apply, the following five elements must be met:

> [T]he party asserting [collateral estoppel] must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Id.* at 535 (citing *Gibson v. Trant*, 58 S.W.3d 103, 118 (Tenn. 2001) (Birch J., concurring and dissenting)). The determination of "whether collateral estoppel applies is a question of law." *Id.* (citations omitted).

5

Moss argues NMM is collaterally estopped from asserting that Moss never acquired title to the Elvis guitar. Moss argues that the issue was before the Tennessee court and that the court's ruling is binding. This court disagrees and finds that collateral estoppel does not apply to NMM for two reasons: (1) NMM was not in privity with Johnson; and (2) NMM did not have a "full and fair opportunity" to litigate its claim.

### 1. Privity

The Supreme Court of Tennessee has indicated that parties are not in privity for the purposes of collateral estoppel if one party is denied the opportunity to meaningfully participate in the underlying litigation. *Shelley v. Gipson*, 400 S.W.2d 709, 712-16 (Tenn. 1966). In *Shelley*, James Shelley brought suit against Richard and Jon Gipson for damages arising from a car accident. *Id.* at 710. In earlier litigation, the Gipsons brought suit against Shelley's employer. *Id.* at 710-11. In the earlier suit, the court found that "Mr. Shelley was guilty of negligence which was a proximate cause of the accident and resulting injuries . . . ." *Id.* at 711. Based on the earlier judgment, the Gipsons argued that Shelley was collaterally estopped from relitigating the negligence issue. *See id.* The Supreme Court of Tennessee disagreed and held that collateral estoppel did not apply to Shelley's case. The court wrote:

> It is one of the proud boasts of the Anglo-American legal tradition that every man is entitled to his day in court, that is, a trial court, and Shelley has not had that day to assert his claim for damages. He was certainly not a party to the litigation in the federal court; he had no right to cross-examine witnesses; no control over the litigation; he had no right to appeal the finding of his negligence,

6

> because the judgment was not adverse to him, and since, also, he was not a party.

*Id.* at 715. Because Shelley did not have an opportunity to meaningfully participate in the underlying litigation, he was free to assert his claim anew during the subsequent suit. *See id.*

NMM finds itself in a similar position. During the Tennessee litigation, NMM was unable to assert its claim of ownership, present evidence, cross examine witnesses, or appeal the Tennessee judgment. NMM was unable to shape the Tennessee litigation in any meaningful way. If NMM is collaterally estopped from making its argument that Moss never acquired title to the guitar, NMM would be deprived of its day in court. Thus, the court finds that NMM is not in privity with Johnson, and NMM is not collaterally estopped from arguing that Moss never acquired title to the guitar.

### 2. Full and fair opportunity to litigate

The Supreme Court of Tennessee has held that collateral estoppel does not apply if a party has not received a "full and fair opportunity to litigate." *Id.* at 538. In *Mullins*, the plaintiff brought a federal action against multiple doctors. *Id.* at 533. The plaintiff voluntarily dismissed one of the doctors, Dr. Mejia, once she learned that Dr. Mejia was immune from suit in federal court. *Id.* Plaintiff then started separate proceedings with the Tennessee Claims Commission—suing Dr. Mejia. *Id.* Although Dr. Mejia was not a party to the federal suit, the federal jury assigned "0% of the fault to Dr. Mejia." *Id.* at 534. The State of Tennessee, while representing Dr. Mejia, argued that the federal

7

verdict collaterally estopped plaintiff from litigating Dr. Mejia's negligence in the Tennessee Claims Commission action. *Id.* The Supreme Court of Tennessee disagreed. *Id.* at 540. The court held that collateral estoppel did not apply because plaintiff did not have a "full and fair opportunity to litigate" Dr. Mejia's negligence in the federal proceeding. *Id.* at 538-40. The court noted that the plaintiff had little incentive to prove Dr. Mejia's negligence when Dr. Mejia was not a party to the suit. *Id.* Dr. Mejia also did not have an opportunity to rebut the plaintiff's allegations. *Id.* at 539. Because neither party had an opportunity to fully prosecute or defend the claim, collateral estoppel did not apply. Applying the holding of *Mullins* to this case, the court finds that NMM did not have a full and fair opportunity to litigate in Tennessee. NMM was not a party to the Tennessee action, and the record contains no evidence indicating that Johnson would have adequately represented NMM's interests. For example, NMM did not get to argue that its Sales-Donation Agreement with Johnson stopped Moss from acquiring title to the guitar. This is supported by the fact that the Tennessee judgment contains no reference to NMM or any legal citation. One plausible reading of the Tennessee judgment is that Moss was entitled to specific performance under the contract and that Moss acquired title to the guitar because of the Tennessee action. This conclusion could change if NMM's interests in the guitar were considered. Because there is no evidence that the Tennessee litigation considered how NMM's interest in the guitar affected title between Johnson and Moss, NMM is not collaterally estopped from making its arguments.

For these reasons, the Full Faith and Credit Clause of the United States Constitution and the doctrines of res judicata and collateral estoppel do not require that this court be bound by the Tennessee judgment with respect to NMM.

## II. Motions for summary judgment

Both parties move for summary judgment and make arguments that are different sides to the same coin. The two issues before the court are whether (1) NMM acquired title to the guitar before Johnson and (2) whether NMM is a buyer in the ordinary course of business. Because there are unresolved issues of material fact on each issue, summary judgment is denied.

### A. Legal standard

Summary judgment is granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a factual dispute that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

### B.     Parol evidence

Plaintiff raises a threshold issue: whether parol evidence is permitted to interpret the Johnson-Moss contract. South Dakota and Tennessee law are identical on this issue. While parol evidence may not be used to change the plain meaning of a contract, it may be used to explain an ambiguity within the contract. *Roseth v. Roseth*, 829 N.W.2d 136, 142 (S.D. 2013); *Jones v. Brooks*, 696 S.W.2d 885, 886 (Tenn. 1985). If the court finds a term is ambiguous, it may consider parol evidence to determine the intention of the parties. *See id.*

The court finds that the term "deliver" within the Johnson-Moss contract is ambiguous. The contract states, "Johnson guarantees that he will deliver to Moss both [the Elvis guitar] & [another guitar] on or before April 12, 2009 . . . ." Docket 29-3. The ambiguity arises because South Dakota and Tennessee law both recognize two different types of delivery. SDCL 57A-2-401 and T.C.A. § 47-2-401. Delivery can be completed by "physical delivery," SDCL 57A-2-401(2); T.C.A. § 472-2-401(2), or delivery "made without moving the goods." SDCL 57A-2-401(3)(b); T.C.A. § 47-2-401. The distinction determines when—if ever—the guitar's title passed from Johnson to Moss. Because the

10

word "delivery" is ambiguous, the court will consider the circumstances surrounding the contract.

### C. Johnson's title

Both parties argue summary judgment can be granted based on when Johnson acquired title to the Elvis guitar. NMM argues Moss did not acquire title to the guitar because Moss never took possession of it. Moss argues he acquired title to the guitar when he and Johnson signed their agreement. South Dakota and Tennessee law are the same on this issue. If the goods are to be physically delivered, title passes at the time of delivery. SDCL 57A-2-401(2); T.C.A. § 472-2-401(2). If the goods will not be physically moved and the parties do not exchange a document of title, title passes at the time and place of contracting. SDCL 57A-2-401(3)(b); T.C.A. § 47-2-401.

The key factual issue in this case is whether Johnson was going to physically deliver the Elvis guitar or whether Moss was going to retrieve the guitar from the Rock 'n' Soul Museum. NMM argues Johnson was contractually obligated to physically deliver the guitar. NMM argues this inference is supported by the language of the Johnson-Moss contract and the fact that Moss never notified the Rock 'n' Soul Museum that he was the owner of the Elvis guitar. Moss, in contrast, claims the parties agreed that delivery would be made without moving the guitar. Moss supports his argument with his deposition testimony that he agreed to let the guitar stay on display at the Rock 'n' Soul Museum. Moss argues he held title to the guitar but allowed the Rock 'n' Soul Museum to keep the guitar on display until January 2009. Based on

each party's arguments and factual support, a reasonable fact finder could rule for either side. Because evidence supports both parties' arguments, a factual dispute exists, and summary judgment is denied for both parties.

### D. Buyer in the ordinary course of business

Under SDCL 57A-2-403(2), "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." SDCL 57A-2-403(2). NMM argues it is a buyer in the ordinary course of business, and Moss disagrees for three independent reasons. Moss argues that (1) NMM is not a "buyer," (2) Moss never "entrusted" Johnson with the Elvis guitar, and (3) NMM did not act in good faith during its transaction with Johnson.

#### 1. Buyer

To be a "buyer," a person may take the property by "cash, by exchange of other property, or on secured or unsecured credit . . . ." SDCL 57A-1-201(b)(9). Moss argues NMM is not a "buyer" because Johnson donated the guitar to NMM. Moss supports his argument by pointing to the agreement NMM had with Johnson. The Sales-Donation Agreement states Johnson "agrees to donate" the Elvis guitar to NMM. Docket 29-13. Because the agreement says "donate," Moss argues NMM cannot by definition be a "buyer." In response, NMM argues that its agreement with Johnson represents one packaged transaction. NMM argues that it paid $250,000 to take title to all the instruments listed in the agreement, not just the John Entwistle guitar.

12

The parties' dispute illustrates the unresolved factual issue about whether NMM is a "buyer." A reasonable fact finder could conclude that Johnson gave the guitar to NMM as a gift and that NMM is not a buyer. On the other hand, a reasonable fact finder could also decide that the Sales-Donation Agreement represents one packaged transaction. For example, a fact finder could conclude that the donation section of the agreement is inseparable from the sales section of the agreement. This is supported by the fact that NMM authenticated all of the instruments before signing the agreement. Thus, a reasonable fact finder could infer that neither section of the agreement was independent of the other. Because this element is factually disputed, neither party is entitled to summary judgment on the issue of whether NMM is a buyer in the ordinary course of business.

### 2. Entrustment

To qualify as a buyer in the ordinary course of business, buyers must purchase their goods from a merchant who was "entrusted" with the goods. Under SDCL 57A-2-403(3), entrustment is "any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be theft under the criminal law." SDCL 57A-2-403(3).

Moss argues he never entrusted Johnson with the Elvis guitar. Moss asserts that Johnson converted the guitar when he retrieved it from the Rock 'n' Soul Museum. NMM argues Johnson had title to the guitar when he

13

removed it and that Johnson merely exercised his ownership rights by taking the guitar. Once again, the parties' dispute shows the unresolved factual issues that remain. A reasonable fact finder could believe that Johnson—in essence—stole the guitar when he removed it from the Rock 'n' Soul Museum because he no longer had title to the guitar. On the other hand, a reasonable fact finder could find that because Moss had not paid the remaining $50,000 owed to Johnson, Johnson still had title to the guitar and was merely exercising his ownership rights. Or a reasonable fact finder could conclude that Moss acquiesced to Johnson's possession of the guitar because Moss did not take legal action for several years after he learned that Johnson had removed the guitar from the Rock 'n' Soul Museum. Because of the factual dispute, neither party is entitled to summary judgment on the buyer in ordinary course theory.

### 3. Good faith

A buyer in the ordinary course of business must act in "good faith." SDCL 57A-1-201(b)(9). Good faith is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." SDCL 57A-1-201(b)(20). A buyer must not have "knowledge that the sale violates the rights of another person in the goods . . . ." SDCL 57A-1-201(b)(9). Moss argues NMM did not observe "reasonable commercial standards in the trade" because NMM failed to investigate Johnson's claim to title. Docket 28 at 4. NMM, in contrast, argues it followed reasonable commercial standards of fair dealing when it authenticated the instruments.

The determination of whether NMM followed reasonable commercial standards is inherently fact intensive. The fact finder must determine what is commercially reasonable and then find whether NMM adhered to that standard. Both parties provide credible evidence that the standard was or was not met. Because a reasonable fact finder could decide for either party, summary judgment on this theory is denied.

## CONCLUSION

Summary judgment will not be granted for either party because genuine questions of material fact remain. A factual dispute exists as to whether Moss acquired title to the guitar and whether NMM is a buyer in the ordinary course of business. Accordingly, it is

ORDERED that plaintiff's motion for summary judgment (Docket 34) is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 26) is denied.

DATED this 11th day of March 2016.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE