UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL MUSIC MUSEUM: AMERICA'S SHRINE TO MUSIC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ROBERT JOHNSON and LARRY MOSS,<br><br>　　　　　Defendants. | 4:14-CV-04113-KES<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　　The National Music Museum: America's Shrine to Music (NMM) brings suit against Larry Moss and Robert Johnson. NMM seeks a declaratory judgment that it is the legal owner of a Martin D-35 guitar that was formerly owned by Elvis Presley. A bench trial was held on August 2, 2016. The court finds that NMM is the legal owner of the Martin D-35 guitar.

### BACKGROUND

　　　　The following facts have been established by the greater weight of the evidence:

　　　　Robert Johnson and Larry Moss have known each other for 35 years. Docket 58 at 142. They first met because of their interest in historic memorabilia. *Id.* at 141. Their mutual interest in collectables led to a friendship and business relationship. *See id.* at 141-42, 219-220. Prior to 2008, Moss had

purchased 15-20 pieces of memorabilia from Johnson. *Id.* at 219-220. Johnson would contact Moss whenever Johnson came across pieces Moss would enjoy. *Id.* at 219. This arrangement led to Moss's interest in the Martin D-35 guitar.

In the summer of 2007, Johnson contacted Moss about acquiring three guitars once owned by Elvis, including the Martin D-35 guitar. *Id.* at 148. The original agreement involved Moss paying $95,000 for all three guitars. *Id.* at 149. Johnson would negotiate the purchase between Moss and a third-party seller. *Id.* at 148-49.

The day Johnson met with the third-party seller, Johnson called Moss twice giving him updates on the purchase. *Id.* at 149. During the first call, Johnson said the price had gone down to $90,000. *Id.* On the second call, Johnson said, "I might have it down to $88,000. I'll let you know. In the meantime, you need to wire me the money." *Id.* Moss, however, never sent the money because Johnson never told him where to send the money or how to send it. *Id.* at 150. Johnson and Moss had no further contact that day. *Id.* at 149-50. Five to six days later, when Johnson finally called Moss, Johnson claimed the deal did not go through because Moss failed to wire the money. *Id.* at 151. While testifying at trial, Moss described the situation as "no harm, no foul." Docket 58 at 156. Moss explained, "Well, we never had a deal. I never gave him the money. He never gave me any guitars. There was no deal." *Id.* at 154-55.

Later in 2007, Moss saw a news article featuring Johnson and the three Elvis guitars that Moss had agreed to buy. *Id.* at 152. Moss accused Johnson of

2

lying about the availability of the guitars, the cost of the guitars, and whether the deal over the guitars happened as originally planned. *Id.* at 155-56; *see also* Exhibit 1. About six months later, on February 12, 2008, Johnson met with Moss to discuss the sale of additional music memorabilia. *Id.* at 162. They eventually came to an agreement that Moss would pay Johnson $120,000 for four guitars: three guitars connected to Elvis and one guitar once owned by Sonny Burgess. Exhibit 4. Moss typed up the contract and organized the transaction into two parts. *Id.* Part one involved Moss paying $70,000 to Johnson and taking immediate possession of two of the guitars. *Id.* Part two of the transaction required Johnson to deliver the two remaining guitars—one of which was the Martin D-35 guitar—by April 12, 2009. *Id.* Upon delivery, Moss would pay Johnson $50,000. *Id.*

Moss testified that he was unable to take possession of the Martin D-35 guitar on the day of the meeting because the guitar was on display at the Rock 'n' Soul Museum in Memphis, Tennessee. Exhibit 14. Johnson told Moss that the Martin D-35 was scheduled to be at Rock 'n' Soul until January 2009 because of a previous agreement Johnson had made with the museum. Docket 58 at 164-65. Johnson asked Moss not to retrieve the Martin D-35 from Rock 'n' Soul so Johnson would avoid an embarrassing situation. Docket 58 at 169-70. Moss agreed that he would not retrieve the guitar. *Id.* At trial, Moss testified that he did not want to cause Johnson any embarrassment by telling Rock 'n' Soul he owned the guitar. *Id.*

Toward the end of 2008, Johnson took the Martin D-35 from Rock 'n' Soul. Exhibit 14. About three months later, Moss visited Rock 'n' Soul and saw that the Martin D-35 was gone. Docket 58 at 222. At that time, Moss did not contact Johnson about the guitar. *Id.* at 223. Moss did not tell Rock 'n' Soul that he was the owner of the Martin D-35. *See* Docket 58 at 225. The April 2009 delivery date passed without Johnson making delivery, and at that time, Moss did not start any legal proceedings against Johnson. *Id.* at 183, 227. From February 2009 to July 2009, Moss did not contact Johnson. *Id.* at 223.

Later that year, Johnson learned that the Martin D-35 was being auctioned online by Alexander Historical Auctions. *Id.* at 183; Exhibit 8. In a July 9 email exchange between Moss and Rock 'n' Soul, Moss learned that Johnson removed the Martin D-35 from Rock 'n' Soul to be "refurbished." Exhibit 8. In the same email exchange, Moss sent Rock 'n' Soul a link to the Alexander website, where the guitar was being auctioned. *Id.* Although the guitar was set for auction in July 2009, the auction was postponed until October of that year. Docket 58 at 186; Exhibits 11, 12.

Prior to the auction, Moss contacted Alexander's and asked them to remove the Martin D-35 from the auction. Exhibit 12. Moss did not take any further action to stop the auction. During the auction, no one bid above the reserve price, and the Martin D-35 was not sold. Exhibit 12; *see* Docket 58 at 185, 188-89. After the auction, Moss followed up with Alexander's on October 27, 2009, and November 2, 2009, trying to learn who owned the Martin D-35. Exhibits 12, 13. In his October 27 email, Moss wrote, "The ownership of that

4

guitar is very much disputed at this point and I would like to try to resolve it before the courts get involved." Exhibit 12. Moss never received a substantive response from Alexander's. Docket 58 at 183-184. Again, Moss did not start legal proceedings against Johnson. And Moss did not ask Johnson to deliver the Martin D-35 to him.

In December 2009, Johnson sent Moss a string of emails about the auction at Alexander's. Exhibits 11, 15, 16. Johnson forwarded Moss the description Alexander's used to promote the Martin D-35. Exhibit 11. Johnson also forwarded Moss Johnson's email to Alexander's detailing the damage allegedly done to the Martin D-35 while it was at Alexander's. Exhibits 15, 16. Moss did not ask Johnson to deliver the Martin D-35 to him.

Another six months pass, and Johnson emailed Moss again on June 15, 2010. Exhibit 18. Johnson asked Moss about his interest in the Martin D-35. *Id.* Johnson explained that he needed to satisfy his investors if Moss wanted to get the guitar. Exhibit 18. Johnson also said that he has a lawsuit pending against Alexander's for the damage to the guitar. *Id.* A few weeks later, Johnson emailed Moss again with a copy of the lawsuit. Exhibit 19. Again, Moss did not ask Johnson to deliver the guitar to him.

Then on July 5, 2010—three years after Johnson and Moss first discussed the purchase of the Martin D-35—Johnson emailed Moss a new proposal. Exhibit 20. Johnson suggested that he and Moss enter into a partnership on the Martin D-35 and two other guitars. *Id.* Johnson requested

5

that Moss provide $70,000 cash and additional music memorabilia. *Id.* Moss replied the same day with only two words: "No thanks!" Exhibit 21.

Four days later, on July 9, 2010, Johnson notified Moss that the Martin D-35 was collateral for another deal. Exhibit 22. Johnson wrote that he would put Moss in contact with the person holding the Martin D-35 if Moss did not want to make a cash offer to Johnson. *Id.* The same day, Moss replied to Johnson. Exhibit 23. Moss told Johnson in part that "I'm screwed on the $70,000 that I paid you towards the whole Elvis guitar deal to begin with – especially on that metal piece of CRAP! And the broken – now REALLY BUSTED UP – Martin couldn't be sold if it had to with it in the condition that it's in." *Id.* Two hours later, Johnson emailed back with "PLEASE DO NOT CONTACT ME AGAIN." *Id.* Again, Moss did not start legal proceedings against Johnson. *See* Docket 58 at 227. Moss did not ask who currently held the Martin D-35. *See* Exhibit 23.

In November 2010, Johnson reached out to NMM. Exhibit 24. Johnson offered to donate a group of instruments on behalf of the Texas Musicians Museum, including the Martin D-35. *Id.* Andre Larson, NMM's Founding Director, replied to Johnson's email the same day, and in February 2011, Dr. Margaret Banks, NMM's Interim Executive Director, began talks with Johnson. *Id.*; Exhibit 29. While Johnson was in contact with NMM, Johnson also emailed Moss again. Exhibit 27. This time Johnson emailed a letter discrediting the authenticity of a piece of Elvis memorabilia owned by Moss. Exhibits 26, 27. Moss did not reply.

Two years later, on February 6, 2013, NMM and Johnson reached an agreement. Exhibit 39. NMM and Johnson signed a sales-donation agreement in which NMM agreed to pay Johnson $250,000 for a John Entwistle Gibson Korina Explorer guitar. *Id.* In exchange for the $250,000, NMM also received seven enumerated donations, one of which was the Martin D-35 guitar. *Id.*

Later that year on August 6, 2013, Moss and Kathy Gladstone, a friend of Johnson, exchanged emails. Exhibit 51. Johnson wanted to know what happened to the Martin D-35. *See id.* Gladstone passed on a message from Johnson that threatened to make public the letter that questioned the authenticity of the Elvis memorabilia that was owned by Moss, and Johnson claimed documents he sent to Moss by fax from Hollywood were forged. *Id.* Moss replied that Johnson had been dishonest multiple times and that Moss would talk with Johnson on August 16. *Id.* Finally, on December 10, 2013, Moss contacted NMM and claimed he owned the Martin D-35. Exhibit 52.

Toward the beginning of 2014, Johnson filed a claim against Moss in the Chancery Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis. Exhibit 53. Moss filed a counter claim seeking a finding that he was the owner of the Martin D-35. *Id.* At no point during the course of their dealings did Moss initiate legal action against Johnson. *See* Docket 58 at 205. In July 2014, NMM filed a complaint in South Dakota state court seeking a declaratory judgment that it was the rightful owner of the Martin D-35. Docket 1. Later that month, Moss removed the case to federal court. Docket 1-3. On January 8, 2015, the Tennessee Chancery Court found that Moss was the

owner of the guitar as between Moss and Johnson; however, NMM was not a party to the proceedings. Exhibit 54. In the litigation before this court, NMM and Moss both moved for summary judgment. The court denied both motions and scheduled the matter for trial.[1] Docket 43. A court trial was held on August 2, 2016. Docket 54.

## DISCUSSION

The threshold issue in this case is whether Moss was ever the owner of the Martin D-35 guitar. If Moss was never the owner of the guitar, then he is unable to prevail in this litigation. Under Article 2 of the Uniform Commercial Code, which is the governing law for Tennessee and South Dakota, "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods . . . ." Tenn. Code Ann. § 47-2-401(2) (2008); SDCL 57A-2-401(2). Here, Johnson never physically delivered the Martin D-35 to Moss. Moss never had physical possession of the Martin D-35. Because Johnson never delivered the guitar and Moss never had possession of it, Moss never acquired title to the Martin D-35. Although Moss could have sought specific performance as a remedy for Johnson's breach of the February 2008 contract between Moss and Johnson, Moss waited until February 2014 to take legal action. Exhibit 53. But title to the Martin D-35 had already passed to NMM in 2013. Exhibit 39.

---

[1] The issue of *res judicata* was previously raised by Moss in his Memorandum of Law in Support of Motion for Summary Judgment (Docket 28). This court held that the doctrines of full faith and credit, claim preclusion, and issue preclusion, did not apply to this case. Docket 43.

In his post-trial brief, Moss argues that title of the Martin D-35 passed at the time he signed his contract with Johnson. Docket 63 at 2-3. Moss argues that "where the goods are identified at the time of contracting and delivery is to be made without moving the goods . . . title passes at the time and place of contracting." *Id.* (quoting Tenn. Code Ann. § 47-2-401(3)(B)). This rule, however, only applies when "delivery is to be made without moving the goods . . . ." Tenn. Code Ann. § 47-2-401(3); SDCL 57A-2-401(3). This is not the case here. The contract signed by Moss and Johnson states that "Johnson guarantees that he will deliver to Moss" the Martin D-35. Exhibit 4. The contract also states that "Moss guarantees that he will pay the balance of $50,000.00 when that delivery occurs." *Id.* The language of the contract specifies a future exchange between Johnson and Moss. Johnson will deliver the Martin D-35 to Moss, and Moss will give Johnson $50,000. The contract does not state that Moss will retrieve the guitar from Rock 'n' Soul. The plain text of the contract shows that delivery was to be made at a future date.

Even if the language of the contract was ambiguous, this interpretation of the contract's text is supported by Moss's testimony. Moss testified that he knew the Martin D-35 was at Rock 'n' Soul. Moss also testified that Johnson asked him not to contact Rock 'n' Soul about the sale of the Martin D-35, and Moss promised not to tell Rock 'n' Soul he purchased the guitar. Moss also promised that he would not retrieve the guitar from Rock 'n' Soul. Based on Moss's statements, the only way Moss could have taken possession of the

9

Martin D-35 was by having Johnson deliver it to him. Moss expected Johnson to physically deliver the guitar.

This conclusion is also supported by the parties' behavior. Moss and Johnson corresponded by email for over five years, and Moss never told Johnson to bring him the Martin D-35. In correspondence with Johnson, Moss never says he is the owner of the Martin D-35. In July 2010, when Johnson proposes a new agreement involving the Martin D-35, Moss merely replied, "No thanks!" Exhibit 21. In an email about a week later, Moss writes in a conversation about the Martin D-35 that "[t]he offer I made is the ONLY thing I'll do." Exhibit 23. By using the future tense, Moss indicated that the earlier 2008 deal had not been completed. Moss did not say that he owned the guitar or that Johnson needed to bring him the guitar. Moss's actions show that Moss and Johnson were treating their contract as two discreet parts. One part was the exchange of guitars and money that occurred on February 12, 2008, and the other part was the exchange of the Martin D-35 for money set to take place on or before April 12, 2009.

This conclusion is reinforced by an examination of Moss's actions before and after the February 2008 contract. In the summer of 2007, Johnson and Moss entered into their first agreement regarding the Martin D-35. Docket 58 at 148. Moss testified that the agreement fell through and that he never owned the Martin D-35 at that time. At trial, Moss testified about the 2007 interaction and said, "Well, we never had a deal. I never gave him the money. He never gave me any guitars. There was no deal." *Id.* at 154-55. Moss's actions in 2007

10

and from 2008-2010 are consistent. Moss never asserted title of the Martin D-35 during either time period because Moss did not believe he had title to the guitar. Moss knew he would not own the Martin D-35 until Johnson delivered it and Moss paid him for it. Because delivery never occurred, Moss never acquired title to the Martin D-35. Tenn. Code Ann. § 47-2-401(2) (2008); SDCL 57A-2-401(2). As a result, Johnson had title to the Martin D-35 and transferred title to NMM. NMM is the owner of the Martin D-35.

## CONCLUSION

Under Tennessee and South Dakota law, title to goods does not pass until delivery is made. Here, Johnson never delivered the Martin D-35 guitar to Moss. Because Johnson never delivered the guitar to Moss, Moss never acquired title to the Martin D-35. The court finds NMM is the owner of the Martin D-35.

DATED this 23rd day of January, 2017.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE